IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOEL RAMIREZ MELGAR,<br><br>                    Petitioner,<br><br>          vs.<br><br>PAMELA BONDI, in their official capacity as Attorney General of the United States; KRISTI NOEM, in their official capacity as Secretary of the United States Department of Homeland Security; ALLEN GILL, in their official capacity as Field Office Director of Omaha office of United States Immigration and Customs Enforcement; TODD M. LYONS, in their official capacity as Acting Director of the United States Immigration and Customs Enforcement; PETER BERG, in their official capacity as St. Paul Field Office Director for Enforcement and Removal Operations, United States Immigration and Customs Enforcement; GENE SAMUELSON, in their official capacity as Phelps County Sheriff, Official of Phelps County Detention Center; and DONALD J. TRUMP, in their official capacity as President of the United States;<br><br>                    Respondents. | 8:25CV555<br><br><br>**MEMORANDUM AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner Joel Ramirez Melgar, an undocumented alien, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, seeking his immediate release from detention by Immigration and Customs Enforcement (ICE), an agency of the United States Department of Homeland Security (DHS), allegedly in violation of his constitutional and statutory rights. Filing 1 at 2 (¶¶ 1–2). Ramirez Melgar also filed an Application for Issuance of Order to Show Cause directing Respondents to show cause why his Petition should not be granted. Filing 2. The judge to whom the case was originally assigned entered an Order to Show Cause, Filing 5, and

1

subsequently—after the case was reassigned to the undersigned—the Court held a hearing on Ramirez Melgar's Petition. Filing 42 (text minute entry). The Court now enters this ruling on the Petition.

Ramirez Melgar's Petition is remarkably similar to the Petition filed by the same attorney on behalf of another undocumented alien, Luciano Vargas Lopez, also challenging his detention. The Court denied relief on Vargas Lopez's Petition on September 30, 2025. *See Vargas Lopez v. Trump*, No. 8:25CV526, ___ F. Supp. 3d ___, 2025 WL 2780351 (D. Neb. Sept. 30, 2025). Although the issues and the parties' arguments in this case are not all identical to those in Vargas Lopez's case, Ramirez Melgar failed to convince the Court that the disposition of his Petition should be any different from the disposition of Vargas Lopez's Petition. Thus, for the reasons stated below, Ramirez Melgar's Petition is denied.

## I.  INTRODUCTION

### A.  Summary of the Legal Context

Some legal context would be helpful to understanding the facts, proceedings, and arguments in this case. Section 2241 of Title 28 of the United States Code extends the writ of habeas corpus *inter alia* to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has recognized that § 2241(c)(3) confers on the District Court jurisdiction to hear habeas corpus challenges to the legality of the detention of aliens, such as Petitioner Joel Ramirez Melgar. *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States. . . . Section 2241, by its terms, requires nothing more."), *judgment entered*, No. 04A41, 2004 WL 7372970 (U.S. July 16, 2004); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("We note at the outset that the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases." (citing 28 U.S.C. § 2241(c)(3))).

The applicable procedures for disposition of a habeas corpus petition under 28 U.S.C. § 2241 are set out in 28 U.S.C. § 2243, which among other things requires a court to "award the writ or issue an order directing the respondent to show cause why the writ should not be granted." 28 U.S.C. § 2243.

Two provisions of the Immigration and Nationality Act (INA) at issue here provide for detention of aliens. Aliens detained pursuant to INA section 235(b), codified at 8 U.S.C. § 1225(b), are not eligible for release on bond. *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) (explaining that "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings"). In contrast, INA section 236(a), codified at 8 U.S.C. § 1226(a), "permits the Attorney General to release [specified] aliens on bond, '[e]xcept as provided in subsection (c) of this section.'" *Jennings*, 583 U.S. at 303 (quoting 8 U.S.C. § 1226(a)). Ramirez Melgar contends that he was detained pursuant to § 1226(a), so that he was entitled to release on bond on an immigration judge's order, but the DHS has refused to release him on bond. Respondents contend that Ramirez Melgar was detained pursuant to § 1225(b), so that the immigration judge did not have jurisdiction to release him on bond.

### B. Factual Background

Ramirez Melgar, who is now 42 years old, was born in Guatemala, but he "came to the United States in 2003." Filing 1 at 5 (¶ 15). He does not allege precisely when or where he entered the United States. Ramirez Melgar is the father of two United States citizen daughters. Filing 1 at 2 (¶ 3). Respondents point to a declaration of a deportation officer who reviewed immigration records averring that Ramirez Melgar is a citizen of Guatemala; that he entered the United States on an unknown date, at an unknown location; and that he was not admitted to or paroled into the United States after inspection by an immigration officer. Filing 29 at 4 (¶¶ 12–14).

Ramirez Melgar lives in Lexington, Nebraska, while his children live in Pennsylvania. Filing 1 at 2 (¶ 3). Ramirez Melgar was detained following a traffic stop in Grand Island, Nebraska, on July 13, 2025, while he was returning from taking his children to the airport following their summer visitation at his home. Filing 1 at 2 (¶¶ 2–3). He remains in civil detention in the custody of the DHS at the Phelps County Jail in Holdredge, Nebraska. Filing 1 at 2 (¶ 2); Filing 29 at 4 (¶ 22). The immigration officer avers that Ramirez Melgar "was encountered" by ICE officers at the Phelps County Jail on July 29, 2025, after he was initially arrested by local police. Filing 29 at 4 (¶¶ 15).

Ramirez Melgar alleges that he has been detained in civil immigration custody since July 29, 2025. Filing 1 at 3 (¶ 8). He alleges, "This detention is a substantial deprivation and burden that puts Petitioner and his family at risk without his parental and financial support." Filing 1 at 2 (¶ 3). At the hearing, Ramirez Melgar's counsel admitted that Ramirez Melgar was providing financial support for his family by working in the United States without documentation that would allow him to do so. Ramirez Melgar argues that he has only minimal traffic violations, that he has been a person of good moral character since entering the United States, and that he has no criminal charges or convictions, so that he is "prima facie eligible for withholding of removal." Filing 1 at 2 (¶ 4), 3 (¶ 6). DHS did not present any evidence that Ramirez Melgar has any criminal charges or convictions.

Ramirez Melgar alleges he "was initially detained without bond by DHS '[p]ursuant to the authority contained in section 236' of the INA," codified at 8 U.S.C. § 1226. Filing 1 at 7 (¶ 24). However, he offers no citation to any exhibit from which the purportedly quoted language is drawn. Filing 1 at 7 (¶ 24). At the hearing, Ramirez Melgar focused on the Notice to Appear, Respondents' Exhibit A, Filing 29-1, as demonstrating the statutory basis for his detention.

Ramirez Melgar points out that at the top of the first page, the Notice to Appear lists three options concerning his presence in the United States, and the option marked as applicable to him states, "You are an alien present in the United States who has not been admitted or paroled." Filing 29-1 at 1.

The Notice to Appear then alleges the following as to Ramirez Melgar,

1.      You are not a citizen or national of the United States;

2.      You are a native of GUATEMALA and a citizen of GUATEMALA;

3.      You entered the United States at or near unknown location, on or about unknown date;

4.      You were not admitted or paroled after inspection by an Immigration Officer[;]

5.      You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act; and/or

6.      You are an immigrant not in possession of a valid unexpired passport, or other suitable travel document, or document of identity and nationality.

Filing 29-1 at 1, 4 (Continuation Page).

Consequently, the Notice to Appear states that DHS charged Ramirez Melgar as an alien "subject to removal" under the following provisions:

212(a) (6) (A) (i) of the Immigration and Nationality Act, as amended, [8 U.S.C. § 1182(a)(6)(A)(i),] in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

212(a) (7) (A) (i) (I) of the Immigration and Nationality Act (Act), as amended, [8 U.S.C. § 1182(a)(7)(A)(i)(I),] as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act [8 U.S.C. § 1181].

Filing 29-1 at 4. The Notice to Appear required Ramirez Melgar to appear before an Immigration Judge (IJ) in Omaha, Nebraska, on August 20, 2025, to show cause why he should not be removed from the United States. Filing 29-1 at 1.

Ramirez Melgar was initially detained without bond. Filing 1 at 7 (¶ 24). At his request, an IJ held a custody redetermination hearing on August 20, 2025. Filing 1 at 7 (¶ 25). Although there is no order of the IJ dated August 20, 2025, in the record before this Court, the IJ apparently ordered Ramirez Melgar released on that date on bond in the amount of $4,000. This is so, because ICE filed a Notice of ICE Intent to Appeal Custody Redetermination on August 20, 2025, noting those terms of the IJ's order. Filing 1-2 at 1; Filing 29 at 4 (¶ 17) (averring that at a bond redetermination hearing on August 20, 2025, the IJ found that he had authority and granted bond in the amount of $4,000). The Notice of ICE Intent to Appeal stated in part, "Filing this form on 8/20/2025 automatically stays the Immigration Judge's custody redetermination decision." Filing 1-2 at 1 (¶ 3) (added date underlined) (citing 8 C.F.R. § 1003.19(i)(2)). It stated further,

> The stay shall lapse if ICE does not file a notice of appeal along with appropriate certification within ten business days of the issuance of the order of the Immigration Judge, or upon ICE's withdrawal of this notice, or as set forth in 8 C.F.R. §1003.6(c)(4) and (5).

Filing 1-2 at 1 (¶ 4) (citing 8 C.F.R. § 1003.6(c)(1)). Attached to the Notice was an "EOIR-43 Senior Legal Official Certification," signed by the Chief Counsel for the Office of the Principal Legal Advisor, Minneapolis U.S. Immigration and Customs Enforcement, certifying that he had approved the filing of the Notice and that he was satisfied that the record and law supported the administrative appeal. Filing 1-2 at 2. DHS filed a Notice of Appeal on August 28, 2025. Filing 29 at 4 (¶ 19); Filing 29-3.

Subsequently, on September 5, 2025, the IJ issued a Bond Memorandum and Order of the Immigration Judge. Filing 1-1. The Bond Memorandum stated the following in pertinent part:

6

> The Department of Homeland Security ("DHS") argued that the [Immigration] Court does not have jurisdiction to issue a bond because the respondent is an applicant for admission and is subject to mandatory custody pursuant to INA § 235(b)(2)(A). The argument is based on INA§ 235(b)(2)(A). . . .
>
> According to DHS, the respondent is considered an alien seeking admission because she [sic] is present in the United States without admission [pursuant to INA § 235(a)(1)].
>
> To date, the Board has not yet published a case on this specific issue. Case law currently insinuates an Immigration Judge has jurisdiction to redetermine a bond for those who entered without inspection. [Citing cases.]
>
> The [Notice to Appear (NTA)] does not list [Ramirez Melgar] as an arriving alien but instead checks the box, "You are an alien present in the United States who has not been admitted or paroled". This is at odds with the scant argument presented [by DHS] at this bond hearing.
>
> While the Court understands that the post hoc issuance of an immigration warrant does not convert a § 235 case into a § 236 case, [citation omitted], there was no other authority asserted in DHS' filings. *Matter of Q.Li*, 29 I&N Dec. 66 is also not on point here. Respondent's NTA does not say that he rebutted an expedited removal, and no evidence is presented respondent ever sought admission into the United States. He is charged with entering unlawfully to the United States in 2003 and no evidence is presented that in the last twenty-two years respondent ever sought admission or tried in any way to legalize his status.
>
> Thus, the Court finds respondent is being held pursuant to INA § 236 authority and has jurisdiction for a bond hearing.

Filing 1-1 at 3–4. Because the IJ determined that he had jurisdiction, he considered the pertinent factors for granting or denying a discretionary bond. Filing 1-1 at 4–5. The IJ concluded, "The Court therefore grants the respondent bond in the amount of $4,000." Filing 1-1 at 5. The IJ then ordered, "IT IS HEREBY ORDERED that Respondent's request for a change in custody status is GRANTED and he shall be released on bond in the amount of $4,000." Filing 1-1 at 5.

Ramirez Melgar alleges that his family members attempted to post the entire amount of the bond funds in accordance with the IJ's order, but "each time they received a denial through the bond processing system 'ICE CeBonds' with a comment of E43 filed bond not permitted." Filing

1 at 8 (¶ 26). Nevertheless, Ramirez Melgar alleges that his family remains prepared and able to post the bond funds to secure his release consistent with the IJ's order. Filing 1 at 8 (¶ 26).

On November 20, 2025, the Board of Immigration Appeals (BIA) entered a Stay Order on DHS's motion for an emergency stay of the IJ's bond order issued on August 20, 2025. Filing 41. This stay replaced the automatic stay imposed upon DHS's filing of its Notice of ICE Intent to Appeal.

## C. Procedural Background

Ramirez Melgar filed his Petition for Habeas Corpus in this Court on September 11, 2025. Filing 1. In his Petition, he asserts three causes of action. The First Cause of Action is captioned "Violation of the Due Process Clause of the Fifth Amendment of the United States Constitution." Filing 1 at 28. It alleges that the automatic stay of his release on bond pursuant to 8 C.F.R. § 1003.19(i)(2) violates his due process rights. Filing 1 at 28–29 (¶¶ 108–110). Ramirez Melgar's Second Cause of Action is captioned "Violation of Immigration and Nationality Act." Filing 1 at 29. It alleges that the DHS's application in his case of 8 U.S.C. § 1225(b)(2), which does not provide for bond, is unlawful because he was detained under 8 U.S.C. § 1226, which expressly provides the possibility of release on bond. Filing 1 at 29 (¶¶ 112–115). Ramirez Melgar's Third Cause of Action is captioned "Ultra Vires Regulation." Filing 1 at 30. It again challenges the lawfulness of the automatic-stay provision in 8 C.F.R. § 1003.19(i)(2) but this time on the ground that it is *ultra vires* as an unlawful use of discretionary power. Filing 1 at 30–31 (¶¶ 117–121).[1] On September 11, 2025, Ramirez Melgar also filed an Application for Issuance of Order to Show Cause. Filing 2. In his Application, Ramirez Melgar requested an order requiring Respondents to

---

[1] These are the same three causes of action—pleaded in essentially identical terms—as the petitioner's causes of action in *Vargas Lopez*, ___ F. Supp. 3d at ___, 2025 WL 2780351, at *4.

show cause why his Petition for Writ of Habeas Corpus should not be granted. Filing 2 at 1–2 (¶ 1).[2]

On September 12, 2025, the judge to whom Ramirez Melgar's habeas case was originally assigned granted the Application for Order to Show Cause and set an expedited briefing schedule on Ramirez Melgar's Petition as required by 28 U.S.C. § 2243. Filing 4. The Order stated *inter alia*, "When briefing is complete, the Court will set a prompt hearing on this matter." Filing 4 at 2 (¶ 5). Respondents who are federal officials filed a Response to the Petition for Writ of Habeas Corpus on October 8, 2025. Filing 27. Respondent Gene Samuelson, the Phelps County Sheriff, has neither appeared nor filed a response to the Petition for Writ of Habeas Corpus. Ramirez Melgar filed a Reply Brief in Support of the Petition for Writ of Habeas Corpus on October 14, 2025. Filing 30. However, no hearing was set at that time.

On October 29, 2025, Chief United States District Judge Robert F. Rossiter, Jr., reassigned this case to the undersigned because of a health emergency of the judge previously assigned this case. Filing 32.[3] Unfortunately, owing to administrative or clerical errors or confusion, and the lack of a pending motion, the undersigned was not made aware until Tuesday, November 25, 2025, that this matter was ready for a hearing to be set. That was the day that Ramirez Melgar's counsel informed the Court that a hearing in this matter needed to be set. The Court then promptly set this hearing for December 1, 2025. Filing 38. The hearing took place as scheduled on December 1, 2025. Filing 42 (text minute entry).

---

[2] Ramirez Melgar also filed an Application for Cancellation of Removal for Non-Permanent Residents in administrative proceedings on September 17, 2025, which is not in the record. Filing 29 at 4 (¶ 20). He was scheduled for an in-person hearing before the immigration court on December 2, 2025. Filing 29 at 4 (¶ 21); Filing 29-4 (Notice of In-Person Hearing).

[3] On October 29, 2025, Chief Judge Rossiter also denied Ramirez Melgar's Motion to Relate Case to Existing Case. Filing 35 (text order).

## II. LEGAL ANALYSIS

### A. Moot Claims

The Court finds that it must first address the potential mootness of some or all claims in Ramirez Melgar's Petition in light of changed circumstances. "When the issues presented in a case are no longer live, the case is moot and is therefore no longer a 'Case' or 'Controversy' for purposes of Article III." *Mille Lacs Band of Ojibwe v. Madore*, 128 F.4th 929, 940 (8th Cir. 2025) (quoting *Whitfield v. Thurston*, 3 F.4th 1045, 1047 (8th Cir. 2021)). "A case becomes moot 'when the requisite personal interest that gave the plaintiff standing to bring the suit disappears as the case proceeds.'" *Id.* (quoting *Whitfield*, 3 F.4th at 1047).

At the hearing on December 1, 2025, Ramirez Melgar agreed with Respondents that part of his Petition was moot. Specifically, Ramirez Melgar acknowledged that he is now under a stay ordered by the BIA, not under the automatic stay imposed upon DHS's filing of its Notice of ICE Intent to Appeal. In other words, the parties agree that the BIA's Stay Order means that Ramirez Melgar is no longer detained subject to the automatic stay pursuant to 8 C.F.R. § 1003.19(i)(2) but pursuant to a discretionary stay granted by the BIA under 8 C.F.R. § 1003.19(i)(1). Thus, Ramirez Melgar's "personal interest" that gave him standing to challenge the automatic stay has "disappear[ed]" as the case proceeded. *Mille Lacs Band of Ojibwe*, 128 F.4th at 940 (quoting *Whitfield*, 3 F.4th at 1047). At the hearing, Ramirez Melgar expressly conceded that his claim that the regulation allowing an automatic stay was *ultra vires* is now moot. That claim is in his Third Cause of Action. *See* Filing 1 at 30–31 (¶¶ 117–121).

Ramirez Melgar did not initially address the viability or mootness of his First Cause of Action, which alleges that the automatic stay of his release on bond pursuant to 8 C.F.R. § 1003.19(i)(2) violates his due process rights. Filing 1 at 28–29 (¶¶ 108–110). However, later in the hearing he did group together his claims that the automatic stay was "*ultra vires* and

unconstitutional" to contrast those moot claims with his claim challenging his detention under § 1225(b), which he argued was not moot. Ramirez Melgar did not suggest that there was any way his claim that the automatic stay was unconstitutional could survive where he acknowledged the mootness of his claim that the automatic stay was *ultra vires* because he is not detained pursuant to the automatic stay. Indeed, the Court concludes that acknowledgement that Ramirez Melgar is detained under the discretionary stay directly moots his allegations in his First Cause of Action that "[t]he automatic stay provision keeping Petitioner detained today is unconstitutional as applied to her [sic] and in violation of his due process rights" and that DHS "invoked an automatic stay of the [bond] order, rendering Petitioner stuck in detention." Filing 1 at 28 (¶ 108). Again, Ramirez Melgar's "personal interest" that gave him standing to challenge the automatic stay on due process grounds has "disappear[ed]" as the case proceeded when he was no longer detained under the automatic stay. *Mille Lacs Band of Ojibwe*, 128 F.4th at 940 (quoting Whitfield, 3 F.4th at 1047). Thus, the Court concludes that both Ramirez Melgar's causes of action relating to the automatic stay—in both his First Cause of Action and his Third Cause of Action—are now moot.

At the hearing, Respondents argued that Ramirez Melgar's whole Petition hinged on the automatic stay. Consequently, Respondents argued that replacement of the automatic stay with a discretionary stay meant that Ramirez Melgar was not detained under the automatic stay. Respondents argued that this circumstance at least potentially moots the entire Petition. However, Respondents asserted that if the whole Petition was not moot, then Ramirez Melgar fell under § 1225, which mandates detention. In response to those contentions, Ramirez Melgar argued that the entire case was not moot even though he argued that the automatic stay was "*ultra vires* and unconstitutional" because he had also asked the Court to determine that he was being held under

11

§ 1226 and not under § 1225. Ramirez Melgar asserted that his claim related to the statutory basis for his detention in his Second Cause of Action was not moot.

The Court concludes that Ramirez Melgar's Second Cause of Action concerning the applicability of either § 1225(b) or § 1226(a) is not moot. If the Court decides that issue in Respondents' favor, Ramirez Melgar's release on bond was void *ab initio*, and the Court would never reach the question of whether the automatic-stay provision in 8 C.F.R. § 1003.19(i)(2) violates due process or is *ultra vires*, even though DHS used that regulation to keep Ramirez Melgar in custody after the IJ ordered him released on bond. *Cf. Vargas Lopez*, ___ F. Supp. 3d at ___, 2025 WL 2780351, at *6 (explaining that the Court did not have to reach the question of whether the automatic stay violated due process or was *ultra vires* if it held that § 1225(b) dictated the petitioner's detention). Thus, although Ramirez Melgar's First and Third Causes of Action are moot, the Court will proceed to the merits of Ramirez Melgar's Second Cause of Action challenging his detention under § 1225(b) on due process grounds because that claim is independent of the regulation challenged in the other two claims.

### B. Statutes Applicable to the Remaining Claim

Several statutes are relevant to the remaining claim. Those statutes relate to habeas corpus petitions and to detention of aliens under the INA pending a determination of admissibility or removability.

Article I, § IX of the United States Constitution states, "The privilege of the Writ of Habeas Corpus shall not be suspended, unless when in cases of Rebellion or Invasion the public Safety may require it." "In enacting the present Title 28 of the United States Code [in 1948], Congress largely recodified the federal courts' pre-existing habeas authority in §§ 2241 and 2243, which, respectively, confer the power to grant the writ and direct the issuing court to 'dispose of the matter as law and justice require.'" *Jones v. Hendrix*, 599 U.S. 465, 473 (2023) (citing 62 Stat. 869, 964–

12

65). As the Court observed above in § I.A., 28 U.S.C. § 2241 extends the writ of habeas corpus *inter alia* to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has recognized that § 2241(c)(3) confers on the District Court jurisdiction to hear habeas corpus challenges to the legality of the detention of aliens, such as Petitioner Joel Ramirez Melgar. *Rasul*, 542 U.S. at 483–84; *Zadvydas*, 533 U.S. at 687. Respondents do not challenge this Court's subject-matter jurisdiction over Ramirez Melgar's Petition for Writ of Habeas Corpus, and the Court is satisfied that is has such jurisdiction. District Courts in this circuit and elsewhere agree that a habeas petitioner under § 2241 bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful. *See Maldonado v. Olson*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *4 (D. Minn. Aug. 15, 2025) (collecting cases).

The issue at the center of this case is the interplay among various statutes in the INA to which undocumented aliens present in the United States are subject. The statutory provisions that Ramirez Melgar has been charged with violating provide as follows:

**(6) Illegal entrants and immigration violators**

>   **(A) Aliens present without admission or parole**

>>      **(i) In general**

>>      An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.

>   * * *

**(7) Documentation requirements**

>   **(A) Immigrants**

>>      **(i) In general**

>>      Except as otherwise specifically provided in this chapter, any immigrant at the time of application for admission--

> **(I)** who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title[.]

8 U.S.C. § 1182(a)(6)(A)(i), (a)(7)(A)(i)(I). Ramirez Melgar received a Notice to Appear as required by 8 U.S.C. § 1229(a) to initiate removal proceedings pursuant to 8 U.S.C. § 1229a for allegedly violating 8 U.S.C. § 1182(a)(6)(A)(i) and (a)(7)(A)(i)(I). *See* Filing 29-1 at 1 (Notice to Appear stating that it was "[i]n removal proceedings under section 240 of the Immigration and Nationality Act," *i.e.*, 8 U.S.C. § 1229a); *see also* 8 U.S.C. § 1229a(a)(2) ("An alien placed in proceedings under this section may be charged with any applicable ground of inadmissibility under section 1182(a) of this title or any applicable ground of deportability under section 1227(a) of this title."). Section 1231 of Title 8 provides for the detention and removal of aliens ordered removed. *See* 8 U.S.C. § 1231.

Pursuant to 8 U.S.C. § 1225, aliens are subject to inspection by immigration officers to determine their admissibility or inadmissibility. In pertinent part, § 1225(a) provides,

> **(a) Inspection**
>
> **(1) Aliens treated as applicants for admission**
>
> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.
>
> \*\*\*
>
> **(3) Inspection**
>
> All aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers.

14

8 U.S.C. § 1225(a)(1), (3); *see also Jennings v. Rodruguez*, 583 U.S. 281, 287 (2018) ("[A]n alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.' [8 U.S.C.] § 1225(a)(1). Applicants for admission must 'be inspected by immigration officers' to ensure that they may be admitted into the country consistent with U.S. immigration law. [8 U.S.C.] § 1225(a)(3).").

Section 1225(b)(1) provides for "[i]nspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." 8 U.S.C. § 1225(b)(1). "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Jennings*, 583 U.S. at 287 (citing 8 U.S.C. § 1225(b)(1)(A)(i), in turn citing §§ 1182(a)(6)(C), (a)(7)). It also applies "to certain other aliens designated by the Attorney General in his discretion." *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(iii)). No party has argued that § 1225(b)(1) is relevant here.

According to the Supreme Court, "Section 1225(b)(2) is broader" than § 1225(b)(1). *Id.* Specifically, "[i]t serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here)." *Id.* (citing 8 U.S.C. §§ 1225(b)(2)(A), (B)). In pertinent part, § 1225(b)(2) states the following:

> **(2) Inspection of other aliens**
>
> > **(A) In general**
> >
> > Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). Section 1225(b) does not include a warrant or an arrest requirement for the detention of such an alien. It also has no provision for release on bond of an alien detained under it. *See Jennings*, 583 U.S. at 297 (explaining that until removal proceedings end, "nothing

in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

On the other hand, 8 U.S.C. § 1226 provides for arrest based on a warrant, detention, and release of aliens. Section 1226(a) provides in pertinent part,

**(a) Arrest, detention, and release**

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General--

**(1)** may continue to detain the arrested alien; and

**(2)** may release the alien on--

**(A)** bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

**(B)** conditional parole[.]

8 U.S.C. § 1226(a)(1), (2). The exception in subsection (c) is for the detention of defined "criminal aliens," 8 U.S.C. § 1226(c), which is not applicable in this case.

Ramirez Melgar asserts that he was detained under § 1226(a), so he was eligible for release on bond. Respondents argue that he was instead detained under § 1225(b)(2), so he was never entitled to release on bond.

### C.  Ramirez Melgar Fails to Prove He Was Detained Under § 1226(a)

*1.  Ramirez Melgar Points to No Evidence Demonstrating that He Was Detained Under § 1226(a)*

As mentioned above, Ramirez Melgar bears the burden of demonstrating by a preponderance of the evidence that his detention is unlawful. *See Maldonado*, 2025 WL 2374411, at *4 (collecting cases). The Court concludes that Ramirez Melgar fails to meet his burden to show that his detention is unlawful, because he points to no evidence demonstrating that he was detained

under § 1226(a), which would entitle him to release on bond on the IJ's order, not under § 1225(b), which has no bond provision.

At the hearing, Ramirez Melgar focused on the Notice to Appear, Respondents' Exhibit A, Filing 29-1, as demonstrating the statutory basis for his detention. He argued that the top of the Notice to Appear specifies three categories of aliens: "You are an arriving alien"; "You are an alien present in the United States who has not been admitted or paroled"; and "You have been admitted to the United States, but are removable for the reasons stated below." Filing 29-1 at 1. Ramirez Melgar argues that these three categories "directly follow" INA sections 235, 236, and 237, codified at 8 U.S.C. §§ 1225, 1226, and 1227, respectively. Ramirez Melgar points out that the Notice to Appear has a mark in the box for the second category, demonstrating that he was detained under § 236, *i.e.*, 8 U.S.C. § 1226. The IJ's decision that he had jurisdiction to grant Ramirez Melgar bond was likewise based in part on the conclusion that the notation in the Notice to Appear that Ramirez Melgar was "an alien present in the United States who has not been admitted or paroled" was "at odds" with DHS's argument that he was detained under § 1225(b). Filing 1-1 at 4. The Court finds Ramirez Melgar's contention and the IJ's similar reasoning unavailing.

While the Court agrees that the Notice to Appear sets out three categories of aliens based on their presence in the United States, those categories are not expressly identified as relating to any bases for detention under §§ 1225, 1226, and 1227. Filing 29-1 at 1. Furthermore, contrary to Ramirez Melgar's contention, the categories in the Notice to Appear do not "directly follow" from specific statutory provisions.

First, § 1225 is not limited to an "arriving alien," the first category identified in the Notice to Appear; instead, it applies to "[a]n alien present in the United States who has not been admitted

or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Thus, under § 1225(a), § 1225(b) applies not just to an "arriving alien" but also applies to an "alien present in the United States who has not been admitted." Section 1225(b)(1) does refer to "aliens arriving in the United States," but also applies to "certain other aliens who have not been admitted or paroled," 8 U.S.C. § 1225(b)(1)—and no party has argued that § 1225(b)(1) applies to Ramirez Melgar. Section 1225(b)(2)—which Respondents argue does apply to Ramirez Melgar—does not mention an "arriving alien" at all; instead, it applies to "an alien who is an applicant for admission." 8 U.S.C. § 1225(b)(2)(A). Thus, an alien to whom § 1225(b)(2)(A) applies could be either an "arriving alien" or an "alien present in the United States who has not been admitted," as stated in § 1225(a).

Section 1226 similarly is not limited to aliens in the second category identified in the Notice to Appear, that is, "alien[s] present in the United States who ha[ve] not been admitted or paroled" but also applies to "arriving aliens" under § 1225(a), where § 1225(a) states that it applies to provisions in the same chapter. *See* 8 U.S.C. § 1225(a)(1). Indeed, § 1226(a) does not expressly mention either an "arriving alien" or an "alien present in the United States who has not been admitted or paroled." Rather, § 1226(a) applies to an alien within the meaning of § 1225(a) who may be arrested and detained on a warrant issued by the Attorney General pending a decision on removal. 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.").

Only the third category of aliens identified in the Notice to Appear, those who "have been admitted to the United States, but are removable," aligns with a category of aliens who fall within the scope of one of the statutes Ramirez Melgar identifies. Section 1227(a) states, "Any alien (including an alien crewman) in and admitted to the United States shall, upon the order of the

Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens. . . .”

Rather than attempting to align with certain statutorily defined categories of aliens, the Court concludes that the three categories of aliens identified at the top of the Notice to Appear are the logical possibilities for aliens subject to removal: either the alien is arriving, already present but not admitted or paroled, or admitted but removable. The Notice to Appear identifying Ramirez Melgar as “an alien present in the United States who has not been admitted or paroled” falls far short of establishing that Ramirez Melgar was detained under § 1226(a) as he alleges rather than under § 1225(b)(2) as Respondents assert.

Nor does any warrant for Ramirez Melgar’s arrest indicate the statutory basis for his initial detention.[4] Respondents’ Exhibit A includes a Warrant for Arrest of Alien, dated July 29, 2025, along with the Notice to Appear. Filing 29-1 at 5. The Warrant directs “[a]ny immigration officer authorized pursuant sections 236 and 287 of the Immigration and Nationality Act [8 U.S.C. § 1226 and § 1357] and part 287 of title 8, Code of Federal Regulations, to serve warrants for immigration . . . to arrest and take into custody [Ramirez Melgar] for removal proceedings under the Immigration and Nationality Act.” Filing 29-1 at 5. The reference to “[a]ny immigration officer authorized pursuant to 236 [§ 1226]” does not demonstrate that Ramirez Melgar was detained pursuant to § 1226(a). Rather, § 1226(a) permits the arrest of an alien “[o]n a warrant issued by the Attorney General,” so it is the warrant that authorizes an immigration officer to make an arrest,

---

[4] Neither Ramirez Melgar’s Petition nor his Reply Brief mentions Ramirez Melgar being detained pursuant to a warrant from ICE or the DHS. Ramirez Melgar’s counsel asserted at the hearing that a warrant for Ramirez Melgar’s arrest, which shows that his detention was pursuant to § 1226, is in the record as one of Respondents’ Exhibits, possibly Filing 29. However, Filing 29 is the declaration of a deportation officer. Filing 29 at 1. It makes no mention of an arrest by ICE or a warrant issued by ICE or DHS, and no mention that Ramirez Melgar was detained under § 1226 or any other statutory provision; instead, it states that Ramirez Melgar was “initially arrested by local Police.” Filing 29 at 4 (¶ 15).

not whether the alien is or is to be detained under § 1226(a). 8 U.S.C. § 1226(a). Indeed, as the IJ observed in this case, "the post hoc issuance of an immigration warrant does not convert a § 235 [§ 1225] case into a § 236 [§ 1226] case. Filing 1-1 at 4 (citing *Matter of Q. Li*, 29 I&N Dec. 66, fn.4 (BIA 2025)).

Lastly, as to the question of an evidentiary basis for application of § 1226(a), the IJ based his finding that Ramirez Melgar was detained under § 1226(a) on the following evidence:

> Respondent's [Notice to Appear (NTA)] does not say that he rebutted an expedited removal, and no evidence is presented respondent ever sought admission into the United States. He is charged with entering unlawfully to the United States in 2003 and no evidence is presented that in the last twenty-two years respondent ever sought admission or tried in any way to legalize his status.

Filing 1-1 at 4. The problem with these findings is that they are untethered from statutory requirements—*i.e.*, legally irrelevant. First, as explained in detail below, § 1226(a) and § 1225(b) are not mutually exclusive but overlapping. Thus, the lack of any application for admission does not channel an alien into the exclusive application of § 1226(a). Moreover, the applicability of § 1225(b) is not dependent upon whether an alien has applied for or sought admission; rather, it is dependent on whether the alien is deemed an "applicant for admission" under § 1225(a)(1).

Thus, there is no evidence in the record showing that Ramirez Melgar was detained under § 1226(a) rather that § 1225(b).

### 2. *Ramirez Melgar Fails to Establish that He Was Detained under § 1226(a) as a Matter of Law*

Ramirez Melgar argues that he was detained under § 1226(a) as a matter of law, based on his contention that only § 1226(a) applies to the circumstances in which he was found in the United States. As the Court concluded in *Vargas Lopez*, ___ F. Supp. 3d at ___, 2025 WL 2780351, at *7–8, this argument is premised on the flawed assumption that § 1225(b)(2) and § 1226(a) apply to distinct groups of aliens, *i.e.*, that they are mutually exclusive.

a. Sections 1225(b)(2) and 1226(a) Overlap

In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the Supreme Court stated,

> U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Jennings*, 583 U.S. at 289. However, this statement does not mean that § 1225(b) and § 1226(a) are mutually exclusive, separating aliens "seeking admission" to whom § 1225(b) applies from aliens "already in the country" to whom § 1226(a) applies.

The Supreme Court interpreted § 1225(b) more specifically as follows:

> As noted, § 1225(b) applies primarily to aliens seeking entry into the United States ("applicants for admission" in the language of the statute). Section 1225(b) divides these applicants into two categories. First, certain aliens claiming a credible fear of persecution under § 1225(b)(1) "shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). Second, aliens falling within the scope of § 1225(b)(2) "shall be detained for a [removal] proceeding." § 1225(b)(2)(A).
>
> Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for "further consideration of the application for asylum," and § 1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.

*Jennings*, 583 U.S. at 297. Thus, the Supreme Court did not state that § 1225(b) applies only "to aliens seeking entry into the United States"; rather, the Supreme Court said § 1225(b) "applies primarily to aliens seeking entry into the United States." *Id.* As a matter of plain language, the additional aliens to whom § 1225(b) applies besides those "seeking entry" are "alien[s] present in the United States who ha[ve] not been admitted" according to the definition of "applicants for admission" in § 1225(a)(1).

The Supreme Court then addressed § 1226:

While the language of §§ 1225(b)(1) and (b)(2) is quite clear, § 1226(c) is even clearer. As noted, § 1226 applies to aliens already present in the United States. Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings. Section 1226(a) also permits the Attorney General to release those aliens on bond, "[e]xcept as provided in subsection (c) of this section." Section 1226(c) in turn states that the Attorney General "shall take into custody any alien" who falls into one of the enumerated categories involving criminal offenses and terrorist activities. § 1226(c)(1).

*Jennings*, 583 U.S. at 303. The Supreme Court further explained § 1226's bond provisions as follows:

[A]s noted, § 1226(a) authorizes the Attorney General to arrest and detain an alien "pending a decision on whether the alien is to be removed from the United States." As long as the detained alien is not covered by § 1226(c), the Attorney General "may release" the alien on "bond ... or conditional parole." § 1226(a). Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention. *See* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1).

*Jennings*, 583 U.S. at 306. "[A]lien[s] present in the United States who ha[ve] not been admitted" defined in § 1225(a)(1), to whom § 1225(b)(2) applies, include—as a matter of plain language—the same group of aliens to whom the Supreme Court stated § 1226(a) applies, that is "aliens already present in the United States." *Jennings*, 583 U.S. at 297.

Thus, the Court concludes that the two statues "overlap" as to aliens they cover, like a Venn Diagram. To put it another way, some aliens certainly fall within § 1225(b)(2), even if they may also fall within § 1226(a). Under such circumstances, Respondents may either 1) detain such aliens without the possibility of release on bond under § 1225(b)(2), or 2) detain the aliens under § 1226(a) and provide the permissive possibility of release on bond. The Court will develop its reasons for this conclusion in more detail in the next subsection.

b. **Ramirez Melgar May Be Detained under § 1225(b) Even If He Is Also Subject to § 1226(a)**

The IJ concluded that Ramirez Melgar was detained under § 1226(a), so that the IJ had jurisdiction to decide whether to release Ramirez Melgar on bond. However, under subsequent

22

authority from the BIA that is binding on the IJ and the plain language of the statutes at issue, the

IJ's conclusion is unpersuasive.

After the IJ issued his Bond Memorandum and Order, the BIA concluded as follows:

> Section 236 [8 U.S.C. § 1226] does not purport to overrule the mandatory detention requirements for arriving aliens and applicants for admission explicitly set forth in section 235(b)(1) and (2) of the INA, 8 U.S.C. § 1225(b)(1), (2). Thus, while an inadmissible alien who establishes that he or she has been present in the United States for over 2 years is not subject to the expedited removal process, the alien nevertheless "shall be detained for a proceeding under section 240." INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A).

*Matter of Hurtado*, 29 I&N Dec. 216, 219–220 (BIA 2025). In *Hurtado*, the BIA held as follows:

> Under the plain reading of the INA, we affirm the Immigration Judge's determination that he did not have authority over the bond request because aliens who are present in the United States without admission are applicants for admission as defined under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings. *See Jennings*, 583 U.S. at 300[.]

*Hurtado*, 29 I&N Dec. at 220.

Although the reasoning in *Hurtado* is binding upon the IJ, and in the judgment of this Court

the IJ's detention in this case will certainly be overruled by the BIA when DHS appeals Ramirez

Melgar's release on bond—at least if *Hurtado* remains the law for immigration courts—the

*Hurtado* decision is not binding upon this Court in this habeas action. Thus, the legal question this

Court must decide is whether Ramirez Melgar is an alien who may be and was detained under

§ 1225(b)(2). If Ramirez Melgar may be and was properly detained under § 1225(b)(2), he was

not eligible for a bond hearing in front of the IJ, and he is not entitled to habeas relief from detention

in this Court.

The Court concludes that Ramirez Melgar is an alien within the "catchall" scope of

§ 1225(b)(2) subject to detention without possibility of release on bond through a proceeding on

removal under § 1229a. 8 U.S.C. § 1225(b)(2); *Jennings*, 583 U.S. at 287 ("[Section 1225(b)(2)]

serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here).”). Ramirez Melgar is an “applicant for admission” as defined by § 1225(a) in that he is “[a]n alien present in the United States who has not been admitted.” 8 U.S.C. § 1225(a) (defining “applicant for admission”). He is also an “applicant for admission” consistent with the conclusion of the BIA in *Hurtado* and the Supreme Court in *Jennings*. Just because Ramirez Melgar illegally remained in this country for years does not mean that he is suddenly not an “applicant for admission” under § 1225(b)(2). As the Court observed at the hearing, Ramirez Melgar was here, he was working here, he was providing for his family, and he intends to stay here and not be removed, which as a matter of plain language makes him an “applicant for admission.” His intent to stay in the United States is apparent from his filing of an Application for Cancellation of Removal for Non-Permanent Residents in administrative proceedings on September 17, 2025. Filing 29 at 4 (¶ 20). At Ramirez Melgar’s detention hearing before the IJ, the DHS sought his detention under § 1225(b)(2). Even if Ramirez Melgar might fall within the scope of § 1226(a), he certainly fits within the language of § 1225(b)(2) as well. The Court concludes that the plain language of § 1225(b)(2) and the “all applicants for admission” language of *Jennings* permit the DHS to detain Ramirez Melgar under § 1225(b)(2). *Jennings*, 583 U.S. at 287.

This reading of the overlapping relationship between § 1225(b) and § 1226(a) is not only consistent with the plain language of the two provisions but consistent with the interpretation of the two provisions under *Jennings*. First, § 1226 does not contain language limiting its application “to aliens already present in the United States.” *Compare Jennings*, 583 U.S. at 289 (stating that United States immigration law “authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).”); *id*. at 303 (“As

24

noted, § 1226 applies to aliens already present in the United States."), *with* 8 U.S.C. § 1226(a) (containing no reference to aliens "present" or "already present" in the United States); 8 U.S.C. § 1226(c) (containing no reference to "criminal aliens" "present" or "already present" in the United States). Consequently, the references to "aliens" in § 1226 must be read to mean "alien[s] present in the United States who ha[ve] not been admitted" within the meaning of § 1225(a)(1) and within at least the "catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)" in § 1225(b)(2). *Jennings*, 583 U.S. at 287.

Thus, Ramirez Melgar was properly detained under § 1225(b)(2).[5]

### 3. *Ramirez Melgar's Counterarguments Are Unpersuasive*

#### a. Ramirez Melgar's Focus on the Manner of the Encounter with ICE Is Misdirected

At the hearing on his Petition, Ramirez Melgar attempted to avoid the conclusion just above by asserting that it is the manner of the encounter an alien has with ICE or the DHS that determines the statutory provision under which the alien is detained. Ramirez Melgar argues that the facts of the encounter cannot be altered to suit DHS's desire to detain or not detain a particular alien. He argues Ramirez Melgar was encountered inside the United States after already having been present in the United States for several years, and the manner of that encounter dictates that § 1226 is the statutory provision under which he was detained. This argument is unavailing.

As explained above in §§ II.C.2.a. and b., being encountered inside the United States rather than at the border attempting to enter does not dictate the applicability of § 1226(a) versus the applicability of § 1225(b). As a matter of plain language, the aliens to whom § 1225(b) applies

---

[5] Even if Ramirez Melgar is subject to § 1226(a) in addition to § 1225(b), this Court sees no reason why the DHS may not choose to detain Ramirez Melgar under the statute that does not allow for release on bond, § 1225(b). Indeed, in the area of immigration where the executive has considerable discretion, the executive may choose to pursue this civil action in any manner allowed by applicable law.

include "alien[s] present in the United States who ha[ve] not been admitted" according to the definition of "applicants for admission" in § 1225(a)(1). Far from making § 1226 and § 1227 obsolete or redundant as Ramirez Melgar argues, this reading applies the plain meaning of the definition of "applicants for admission" in § 1225(a), while Ramirez Melgar's reading would make superfluous part of § 1225(a)'s definition of "applicants for admission." Furthermore, § 1226 is not made obsolete or redundant when § 1225(b) and § 1226(a) are properly read as overlapping rather than mutually exclusive.

      b.   Ramirez Melgar's Attempt to Read an Additional Element into § 1225(b) Is Also Unavailing

In his Reply and at the hearing on his Petition, Ramirez Melgar also tried to avoid the Court's conclusion that he is subject to detention under § 1225(b) by attempting to read into that statute a requirement that the alien is "seeking admission" in addition to being an "applicant for admission" under § 1225(a), but Ramirez Melgar was not "seeking admission." Filing 30 at 12–13. This argument fails because "applicant for admission" is clearly synonymous with "alien seeking admission" in the context of § 1225(b)(2).

Section 1225(b)(2)(A) states,

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). The statute states that it applies "in the case of an alien who is an applicant for admission," so that the subsequent reference to "an alien seeking admission" must be to that "alien who is an applicant for admission." Furthermore, a synonym for "applicant" is "one who seeks an office, honor, position, or award." *See* https://www.merriam-webster.com/thesaurus/applicant. Thus, there can be little doubt that "an alien who is an applicant for admission" is synonymous with "an alien seeking admission." Indeed, in *Jennings*, the

26

Supreme Court referred "to aliens seeking entry into the United States" as "'applicants for admission' in the language of the statute." *Jennings*, 583 U.S. at 297.

Even if "seeking admission" is somehow an additional requirement under § 1225(b)(2)(A), Ramirez Melgar was here, he was working here, he was providing for his family, and he intends to stay here and not be removed, which as a matter of plain language makes him an "applicant for admission." Furthermore, Ramirez Melgar is "an alien seeking admission" because he filed an Application for Cancellation of Removal for Non-Permanent Residents in administrative proceedings on September 17, 2025, which confirms his status as an "alien seeking admission." Filing 29 at 4 (¶ 20).

Thus, Ramirez Melgar falls under § 1225(b)(2) and was not entitled to release on bond. *See Jennings*, 583 U.S. at 297 (explaining that "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings").

### c.   The Class Action in California Does Not Dictate the Result in Ramirez Melgar's Case

One last counterargument that the Court must address is Ramirez Melgar's argument at the hearing that a decision certifying a class action in *Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), controls the result in this case. Ramirez Melgar characterized the decision in *Bautista* as "a nationwide injunction" to the effect that *Hurtado* is not prevailing law and that noncitizens who are currently being held under § 1225(b) but are present in the United States without permission should be given bond hearings, and if they have been granted bond, they should be released on bond. This argument is also unavailing.

A review of the cited decision in *Bautista* shows that it certified a class defined as follows:

Bond Eligible Class: All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to

27

detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

*Bautista*, 2025 WL 3288403, at *9. Assuming without deciding that Ramirez Melgar would fall into such a nationwide class, what the *Bautista* decision did not do was grant the class any injunctive relief. This Court acknowledges that the *Bautista* court disagreed with this Court's interpretation of §§ 1225 and 1226. *See Bautista*, Case No. 5:25-cv-01873-SSS-BFM, CM/ECF no. 81 (Order Granting Petitioners' Motion for Partial Summary Judgment and Denying Request to Enter Final Judgment). The fact that a District Judge in California interpreted the law differently on a summary judgment motion than the undersigned has does not somehow usurp or overrule all other judges in the United States Federal Courts, like this one, who see the issue differently. That decision is no more binding on this Court than any other district court decision that disagrees with this Court's interpretation of the applicable statutes.

The court in *Bautista* concluded that a "nationwide" class is "appropriate." *Bautista*, 2025 WL 3288403, at *9. This Court need not consider whether such a "nationwide" class action seeking relief for what amounts to anyone in the United States in similar circumstances runs afoul of the Supreme Court's decision in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), or is a "class-action workaround" to a bar on "universal injunctions." *CASA*, 606 U.S. at 850. There is as yet no order in *Bautista* granting any injunctive relief to class members.

If Ramirez Melgar is convinced that the class action in *Bautista* affords him relief or will do so, he was welcome to dismiss this individual habeas action and join the class action. However, for now, the *Bautista* class action affords him no relief.

Consequently, Ramirez Melgar is not entitled to release on his Petition for a Writ of Habeas Corpus.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Ramirez Melgar's Petition for Writ of Habeas Corpus, Filing 1, is

denied.

Dated this 5th day of December, 2025.

BY THE COURT:

Brian C. Buescher
United States District Judge